UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID SIROIS,

Plaintiff,

v. C.A. No. 14-472 S

JOANNA L'HEUREUX, et al.

Defendants.

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before this Court is Defendants' Motion for Summary Judgment. (ECF No. 11.) Plaintiff has filed a Response (ECF No. 17) and Defendants have filed a Reply (ECF No. 18). For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.

I. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This includes situations where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986). In determining whether there exists a genuine issue of material fact, this Court must review the facts "in the light most favorable to the non-moving party." Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). However, neither party may rely solely on allegations made in the complaint or their briefs, and must instead supply specific facts "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

II. Background

On October 24, 2011, a young girl was riding her bike to school through the public parking lot adjacent to the Hank Soures Complex. (Defs.' Statement of Undisputed Facts ¶ 1, ECF No. 12.[1]) The girl reported that, while riding through the parking lot, a man "drove up to her in his van, got out and asked her to come over to him." (Id. ¶ 2.) Specifically, the man said "hey, come here." (Detective Rosciti Statement, ECF No. 11-3.) Frightened by the encounter, the girl went home and told her mother what had happened. (Id.) The mother called the police,

[1] Defendants filed a Statement of Undisputed Facts (ECF No. 12) which the Plaintiff has not contested. Therefore, while the Court views the facts in the light most favorable to the Plaintiff, the facts set forth in Defendants' Statement of Undisputed Facts are deemed admitted. See LR Cv 56(a)(3) ("For purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion.").

and several officers, including Detective Donti Rosciti ("Detective Rosciti"), responded to the parking lot.

After arriving in the parking lot, the officers found David Sirois ("Sirois"). (Defs.' Statement of Undisputed Facts ¶ 3, ECF No. 12.) Both the girl and her mother came to the parking lot, where the girl identified Sirois as the individual who had approached her. (Id. ¶ 4.) The officers then took Sirois to the police station for questioning and later charged him with child enticement. (Id. ¶¶ 6-11; Police Record, ECF No. 17-2.) While the charges against Sirois were eventually dropped (Police Record, ECF No. 17-2), the fact of Sirois' arrest was made public by *The Times* newspaper. (ECF No. 17-7.)

Sirois has brought suit against the City of Pawtucket and various Pawtucket Police officers for unlawful arrest (Claim (I), false imprisonment (Claim II), malicious prosecution (Claim III), intentional infliction of emotional distress (Claim IV), negligent infliction of emotional distress (Claim V), defamation (Claim VI), and a violation of the Fourth Amendment under 42 U.S.C. § 1983 (Claim VII). (Complaint, ECF No. 1-2.) Defendants have brought a motion for summary judgment for all of Sirois' claims. Each claim is addressed below.

III. Discussion

A. Intentional Infliction of Emotional Distress (Claim IV) and Negligent Infliction of Emotional Distress (Claim V)

Sirois' intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims require Sirois to "prove physical symptomatology resulting from the alleged improper conduct." Vallinoto v. DiSandro, 688 A.2d 830, 838 (R.I. 1997) (discussing an IIED claim); Clift v. Narragansett Television L.P., 688 A.2d 805, 813 (R.I. 1996) ("[I]n Rhode Island no difference exists between negligent and intentional infliction of emotional distress claims in respect to the need for physical symptomatology."). This requires "evidence of the requisite physical manifestations of [his] alleged emotional distress." DiBattista v. State, 808 A.2d 1081, 1089 (R.I. 2002). In addition, Sirois must provide some evidence that establishes causation. Vallinoto, 688 A.2d at 838.

To prove causation under Rhode Island law, expert testimony is required. In the past, the First Circuit has held that the expert testimony requirement was an open question in Rhode Island:

> Rhode Island case law is silent on the question of the necessity of expert testimony to prove the causation element of IIED. Section 46 of the Restatement

> (Second) of Torts, on which Rhode Island's IIED claim is patterned, also fails to provide any clues; nowhere in § 46 is the introduction of expert medical testimony required or even mentioned. Despite this silence, however, we find that under the particular facts of this case expert medical testimony was indispensable to the proof of causation.

Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1187 (1st Cir. 1996).

However, the Rhode Island Supreme Court has subsequently made clear that claims of "intentional infliction of emotional distress . . . require . . . competent expert medical opinion regarding origin, existence, and causation." Vallinoto, 688 A.2d at 839. In the Vallinoto case, the Rhode Island Supreme Court held that a directed verdict was appropriate where plaintiff failed "to produce at trial any admissible competent medical evidence showing objective physical manifestation of her alleged psychic injuries that proximately resulted to her from [defendant's] actions." Id. at 838. The Court found that plaintiff's testimony was insufficient:

> Although [plaintiff] was competent to testify that she suffered psychic problems and allegedly experienced physical symptomatology therefrom, she was, however . . . not qualified to testify that those specifically alleged psychic and physical ills were proximately caused by [defendant's] actions. The origin and the causal connection of those psychic and physical complaints . . . required expert medical opinion.

Id. Additionally, the Court found that the testimony of plaintiff's social worker was insufficient for the same reason:

> Her social worker's testimony . . . was inherently insufficient by reason of its lack of medical-expert competence and qualification to legally establish the necessary causal relationship for any of [plaintiff's] complaints of psychic injury and physical ills allegedly resulting from [defendant's] actions.

Id.

Sirois' claims suffer from a similar deficiency. The only evidence Sirois has provided regarding physical symptomology and causation for his IIED and NIED claims is his own affidavit. (See Sirois Aff. ¶ 17, ECF No. 17-3.) Sirois explains that after being "arrested and charged with the crime of child enticement [he] began to experience depression like symptoms, anxiety attacks and had difficulty sleeping." (Id.) However, as in the Vallinoto case, Sirois is "not qualified to testify that those specifically alleged psychic and physical ills were proximately caused by [defendant's] actions." 688 A.2d at 838; see also Parrillo v. F.W. Woolworth Co., 518 A.2d 354, 356 (R.I. 1986) (medical evidence must "exclude other unrelated potential causes of plaintiff's . . . injury").

In his brief, Sirois responds to this deficiency by noting that he was "seen by Dr. Marsha Wold on November 17, 2014 and was diagnosed with a major depressive disorder, PTSD, as well as

a panic disorder with agoraphobia." (Pl.'s Resp. 15, ECF No. 17-1.) But in making this assertion, Sirois cites only his own affidavit. This is inadequate for several reasons. First, Sirois' affidavit does not even mention Dr. Wold, let alone describe her diagnosis. (See Sirois Aff., ECF No. 17-3.) Second, while Sirois claims that Dr. Wold has identified certain symptoms, there is no suggestion that Dr. Wold has made a determination regarding the cause of those symptoms.

Lastly, even if Dr. Wold had made a causation determination, and even if that fact was properly documented in Sirois' affidavit, any statement by Sirois describing Dr. Wold's conclusions constitutes inadmissible hearsay. As the First Circuit has made clear,

> the [Plaintiff's] account of what [he] think[s] (or hope[s]) that [a doctor's] testimony might be—amounts to inadmissible hearsay. It is crystal clear that [Plaintiff] had no scientific knowledge as to causation and was incompetent to testify to any of the matters stated. Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.

Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990); see also Fed. R. Civ. P. 56(c)(4). Therefore, as Sirois has provided insufficient evidence with regards to physical symptomology and causation, summary judgment in favor of Defendants is appropriate for the IIED and NIED claims.

B. Defamation (Claim VI)

A defamation claim requires proof of the following elements: "(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages, unless the statement is actionable irrespective of special harm." Nassa v. Hook-SupeRx, Inc., 790 A.2d 368, 373 n.10 (R.I. 2002). In this case, after Sirois' arrest, *The Times* published the following in its "Police Blotter" section:

> David Sirois . . . was arrested on charges of enticement of children – first offense, following an incident in which he allegedly tried to lure several children into his truck . . , police said. Police say they are investigating whether or not there is a link between this suspect, who drove a silver truck, and other recent incidents involving a male trying to lure children into a red truck that occurred in Pawtucket and Cumberland.

(Pl.'s Resp. Ex. F, ECF No. 17-7.) Sirois alleges that, because he had only been arrested for attempting to lure a single child, and not "several children," the statement is false and defamatory.

Problematically, the only evidence that any member of the police department actually provided a statement to *The Times* is the newspaper article itself. That newspaper article is hearsay and cannot be considered as competent evidence at the summary judgment stage. See, e.g., Horta v. Sullivan, 4 F.3d 2, 9 (1st

Cir. 1993) ("[T]he newspaper article may not be regarded in determining whether a genuine issue of material fact exists."). Specifically in the context of a defamation claim, courts have held that the newspaper article that is the subject of the defamation lawsuit is, by itself, insufficient evidence that a defendant made an allegedly defamatory statement. See, e.g., Fitzgerald v. Town of Kingston, 13 F. Supp. 2d 119, 123 (D. Mass. 1998) ("The article is inadmissible hearsay . . . and thus meaningless on a motion for summary judgment, see Fed. R. Civ. P. 56(e)."). Summary judgment in favor of Defendants is therefore appropriate for Sirois' defamation claim.

C. Unlawful Arrest (Claim I), False Imprisonment (Claim II), Malicious Prosecution (Claim III), and Violation of 42 U.S.C. § 1983 (Claim VII).

Sirois has brought claims for unlawful arrest, false imprisonment, malicious prosecution, and a violation of the Fourth Amendment under 42 U.S.C. § 1983. All of these claims hinge on whether the officers who arrested Sirois had probable cause to make that arrest. See Mann v. Cannon, 731 F.2d 54, 62 (1st Cir. 1984) (to prove a Fourth Amendment violation pursuant to § 1983, a "plaintiff must show at a minimum that the arresting officers acted without probable cause"); Beaudoin v. Levesque, 697 A.2d 1065, 1067 (R.I. 1997) ("Probable cause in

[Rhode Island] law is a necessary element in false arrest, false imprisonment, and malicious prosecution claims.”).

In making this determination, the Court first must establish whether Sirois was arrested and when that arrest occurred. The test for whether an “arrest” has occurred is “whether a reasonable person in the suspect’s shoes would understand herself to be subject to restraints comparable to those associated with an arrest.” Morelli v. Webster, 552 F.3d 12, 20 (1st Cir. 2009). Neither party has provided the Court with deposition testimony of the individuals involved in this case. Therefore, to determine whether an arrest took place, and the exact moment when that arrest occurred, the Court is left only with Sirois’ Affidavit (ECF No. 17-3), Detective Rosciti’s Witness Statement (ECF No. 11-3), and Defendants’ Statement of Undisputed Facts (ECF No. 12).

Detective Rosciti’s Witness Statement and Defendants’ Statement of Undisputed Facts provide essentially no explanation of whether or when Sirois was formally placed under arrest. Sirois’ Affidavit, on the other hand, describes his encounter with the Pawtucket Police as follows:

> I was asked if I would voluntarily report to the Pawtucket Police Department. I agreed. It then became clear to me that the Patrol Officers wanted me to ride with them to the police station. . . . I was escorted by a patrol officer into my place of employment. At

> that time, it became clear to me that I was no longer able to refuse to appear at the police department. . . . [A]fter I exited my place of employment, I was frisked, handcuffed and placed in the back of the police vehicle.

(Sirois Aff. ¶¶ 9-12, ECF No. 17-3.) Viewing the evidence in the light most favorable to Sirois for the purposes of summary judgment, the Court will assume that Sirois was placed under arrest at the moment he felt that he "was no longer able to refuse to appear at the police department." (Id.)

The question becomes whether the arresting officers had probable cause to believe Sirois had committed a crime at the time of his arrest. There is probable cause if, at the time of arrest, "the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996). While this requires more than "inarticulate hunches," Terry v. Ohio, 392 U.S. 1, 22 (1968), "the determination does not require scientific certainty." Roche, 81 F.3d at 254. "The preferred approach is pragmatic; it focuses on the 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians,

act.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)).

In the context of a civil lawsuit against state officials, the probable cause determination is "inextricably linked" with the doctrine of qualified immunity. Menebhi v. Mattos, 183 F. Supp. 2d 490, 500 (D.R.I. 2002). Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Lopera v. Town of Coventry, 652 F. Supp. 2d 203, 211 (D.R.I. 2009), aff'd 640 F.3d 388 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Courts address qualified immunity claims as follows:

> Determining whether a public official is entitled to qualified immunity is a two-step inquiry. Under this test, a court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation. The clearly established prong has two aspects: (1) the clarity of the law at the time of the alleged civil rights violation and (2) whether given the facts of the particular case a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. A negative answer to either question results in a finding of qualified immunity for the official asserting the defense.

Id. at 211–12 (internal quotations, citations and brackets omitted); see also Estrada v. Rhode Island, 594 F.3d 56, 63 (1st

Cir. 2010) ("If an officer is found to be deserving of qualified immunity under federal law, he will also be granted qualified immunity for the same claim under Rhode Island law."). As qualified immunity is not a defense at trial, but rather an assertion of immunity from the lawsuit altogether, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Callahan, 555 U.S. at 232. Therefore, the objective reasonableness of an officer's conduct for the purposes of qualified immunity is appropriately resolved by the Court at the summary judgment stage. See id. at 231-32.

In this case, the Court first addresses whether the right at issue was "clearly established." See Lopera, 652 F. Supp. 2d at 212 ("A judge may skip ahead and decide whether the right at issue was clearly established without deciding whether that right was violated."). The parties do not dispute that there was clarity regarding the probable cause requirement for arrest under the Fourth Amendment at the time of Sirois' arrest. Therefore, this Court need only determine whether an objectively reasonable officer would have known that arresting Sirois violated the probable cause requirement. Menebhi, 183 F. Supp. 2d at 499 ("[L]aw enforcement officers who reasonably but mistakenly conclude that probable cause is present are entitled

to immunity.") (internal quotations and emphasis omitted). Unfortunately, the evidence in the record provides little information on that topic. Again, as Defendants have not provided any deposition testimony or affidavits from the officers who arrested Sirois, the Court is left only with Defendants' Statement of Undisputed Facts (ECF No. 12) and Detective Rosciti's Witness Statement (ECF No. 11-3).

Both of those statements establish that: (1) the alleged victim was a young girl (under the age of sixteen); (2) she was approached by a man she did not know who asked her to come over to his car; and (3) she later identified Sirois for the police. (Detective Rosciti Statement, ECF No. 11-3; Defs.' Statement of Undisputed Facts ¶¶ 1-4, ECF No. 12.) Under these undisputed facts, there is little doubt that the arresting officers had reason to believe that the alleged victim had some sort of encounter with Sirois. See, e.g., B.C.R. Transp. Co. Inc. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984) ("[P]robable cause determinations predicated on information furnished by a victim are generally considered to be reliable . . . ."). However, what is much less clear is whether the arresting officers had probable cause to believe that Sirois had committed the crime for which he was arrested (child enticement).

In Rhode Island, a person is guilty of child enticement if they "persuade . . . a minor child under the age of sixteen (16) years, . . to [e]nter a vehicle . . . with [the] intent to engage in felonious conduct against that child . . . ." R.I.G.L. § 11-26-1.5(a). Therefore, to arrest Sirois under this statute, the arresting officers must have had probable cause to believe that Sirois, when talking to the alleged victim, had the "intent to engage in felonious conduct against that child." As was discussed above, in reviewing the arresting officer's determination as to the intent element, the Court must rely solely on Defendants' Statement of Undisputed Facts and Detective Rosciti's Witness Statement. Neither of those pieces of evidence provide any details with regard to the facts known to, or the thought processes of, the arresting officers at the time of Sirois' arrest.

For example, with respect to Detective Rosciti[2], this Court does not know what Detective Rosciti was told by the girl and her mother (beyond simply identifying Sirois), the substance of

[2] Of note, the evidence provided by Defendants does not even clearly establish which officers formally placed Sirois under arrest. This makes the Court's review of the arresting officers' probable cause determination particularly difficult. However, as Detective Rosciti was one of the responding officers, and because Defendants have provided Detective Rosciti's statement as evidence, the Court will consider what evidence was known to Detective Rosciti at the moment of arrest.

the conversation between Detective Rosciti and Sirois, or the basis of Detective Rosciti's credibility determinations with regards to both Sirois and the alleged victim. In addition, while Defendants point to the fact that Sirois matched the description of a man who had recently attempted to entice other children in the Pawtucket area, here again, the Court does not have evidence that this fact was known to the arresting officers at the time of Sirois' arrest.[3] Particularly at the summary judgment stage where all facts are taken in the light most favorable to the non-moving party, the Court will not presume that the arresting officers were aware of certain pieces of evidence, or acted reasonably on the basis of that evidence, without a more clearly developed record.

IV. Conclusion

For the reasons described above, Defendants' Motion for Summary Judgment (ECF No. 11) is GRANTED as to Claim IV (IIED), Claim V (NIED), and Claim VI (defamation), and DENIED as to Claim I (unlawful arrest), Claim II (false imprisonment), Claim

[3] Detective Rosciti's statement does note that Sirois' "description is the same description offered in numerous other enticements over the past several weeks in Pawtucket." However, that statement, which is dated a full two months after Sirois' arrest, does not make clear whether Detective Rosciti – or any other arresting officer – was aware of this information at the time of the arrest, or whether this fact was uncovered after the arrest took place. (See Detective Rosciti Witness Statement, ECF No. 11-3.)

III (malicious prosecution), and Claim VII (violation of 42 U.S.C. § 1983).

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date: December 21, 2016